Priority ___
Send      X
Enter     ___
Closed    ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.  SACV 06-00169 CJC (RNBx)          Date: October 23, 2007

Title:  IN RE COOPER COMPANIES, INC. SECURITIES LITIGATION
         UNITE HERE NATIONAL RETIREMENT FUND, et al. v. THE COOPER
         COMPANIES, INC., et al.


PRESENT:

**HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE**

Michelle Urie                              N/A
Deputy Clerk                           Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

None Present                           None Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS [filed 09/5/07].**

        Having read and considered the papers presented by the parties, the Court finds
this matter appropriate for disposition without a hearing. *See* FED. R. CIV. P. 78; Local
Rule 7-15.  Accordingly, the hearing set for October 29, 2007 at 1:30 p.m. is hereby
vacated and off calendar.

        This is a consolidated securities class action against The Cooper Companies, Inc.
("Cooper") and Individual Defendants John D. Fruth, A. Thomas Bender, Robert S.
Weiss, Steven M. Neil, and Gregory A. Fryling (collectively "Defendants").  Plaintiffs
seek to recover for violations of §§ 10(b) and 20(a) of the 1934 Securities Exchange Act
for allegedly misleading statements related to Cooper's merger with Ocular Sciences, Inc.
("Ocular").  Defendants filed motions to dismiss the Amended Consolidated Complaint
("ACC") for failure to state a claim upon which can be granted.  Specifically, all three
motions allege that Plaintiffs have failed to meet the heightened pleading requirements of
Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act
("PSLRA"), 15 U.S.C. § 78u-4(b).  As currently pled, the consolidated complaint satisfies
in part the stringent requirements of Rule 9(b) and the PSLRA.  Accordingly, the three
motions are GRANTED IN PART and DENIED IN PART, with leave to amend.

DOCKETED ON CM

OCT 2 4 2007

BY _____ 178

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
CV 06-306 CJC (RNBx)
CV 06-331 CJC (ANx)

Date: October 23, 2007
Page 2

### Procedural Background

Plaintiffs filed their first Consolidated Class Action Complaint ("CAC") on July 31, 2006. Cooper and the Individual Defendants (including a number of parties not joined to the ACC) moved to dismiss the CAC on September 29, 2006 on the grounds that the claim failed to satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. By order dated July 17, 2006 ("Order" or "July Order"), this Court granted Defendants' motion to dismiss without prejudice, holding that the complaint did not meet the heightened burden specific to securities actions. The complaint failed to plead specific facts to raise a strong inference that statements by Cooper and its directors were actually false or misleading when made, and that the statements were made with the requisite level of scienter. Order at 6. However, the fact that Directors sold $120 million in stock after a number of ultimately incorrect projections raised a red flag with the Court. *Id.* at 23. This was particularly so because the CAC contained allegations sufficient to raise an inference of negligence on the part of Cooper and its Directors in their statements and actions. *Id.* For those reasons, the Court granted Plaintiffs leave to amend their complaint to correct its deficiencies. *Id.* Plaintiffs were encouraged to "aspire to greater clarity and conciseness in the allegations of their amended complaint." *Id.* The Court further noted that the Ninth Circuit has found allegations which describe content of specific internal documents or rely on information obtained from confidential witnesses are sufficient to withstand a motion to dismiss. *See id.* at 8 n.6 (*citing Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004)).

Plaintiffs filed an Amended Consolidated Complaint ("ACC") on August 9, 2007, which omitted a number of individual defendants named in the CAC: Carol R. Kaufman, John C. Calcagno, B. Norris Battin, James M. Welch, John A. Weber, Nicholas J. Pichotta, Moses Marx, and Steven Rosenberg. Cooper and the Individual Defendants again moved to dismiss, arguing that the ACC had failed to correct the deficiencies of the CAC.

### Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
CV 06-306 CJC (RNBx)
CV 06-331 CJC (ANx)                                              Date: October 23, 2007
Page 3

---

failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 1370, 1374 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1974 (2007). When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

As Plaintiffs seek recovery under § 10(b) of the 1934 Securities Exchange Act, the complaint is subject to the particularity requirement of Federal Rule of Civil Procedure 9(b), *see Semegen v. Weidner*, 780 F.2d 727, 729, 734-35 (9th Cir. 1985), and the PSLRA, *see In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1995) ("*Silicon Graphics*") (". . . Congress generally intended to raise the pleading standards to eliminate abusive securities litigation."). The complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs are also required to "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis added in *Gompper*).

"'[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' and the two requirements may be combined into a unitary inquiry under the PSLRA." *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). For purposes of establish scienter, the complaint is considered in its entirety. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. ---, No. 06-484, slip op. at 11 (Jun. 21, 2007) ("The inquiry . . . is whether *all* of the facts alleged, taken collectively, give

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
           CV 06-306 CJC (RNBx)
           CV 06-331 CJC (ANx)                    Date: October 23, 2007
                                                                 Page 4

rise to a strong inference of scienter, not whether any individual allegation, scrutinized in
isolation, meets that standard.") The inference of scienter must be "cogent and at least as
compelling as any opposing inference one could draw from the facts alleged." *Id.*, slip
op. at 12-13. In adopting this standard, the Court observed that the "inference that the
defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or
even the 'most plausible of competing inferences.'" *Id.*, slip op. at 12 (*quoting Fidel v.
Farley*, 392 F.3d 220, 227 (6th Cir. 2004)). Thus, in the wake of *Tellabs*, district courts
are instructed to evaluate allegations of scienter in a § 10(b) action by answering the
following question: "When the allegations are accepted as true and taken collectively,
would a reasonable person deem the inference of scienter at least as strong as any
opposing inference?" *Id.*, slip op. at 14.

**Material Representations and Omissions**

        Plaintiffs allege five categories of false or misleading statements by Cooper and its
officers and directors between July 28, 2004 and December 12, 2005: (1) statements
about Ocular's Biomedics Premier ("Premier") line of contact lenses; (2) statements
about the market share of Silicon Hydrogel ("SH") contact lenses; (3) statements about
the post-merger integration of the Ocular and Cooper sales forces; (4) statements and
certifications in Cooper's Sarbanes-Oxley ("SOX") filings; and (5) revenue forecasts.

**A.      Statements about Ocular's Biomedics Premier Line of Contact
         Lenses**

        Plaintiffs allege two types of statements by Mr. Bender, Mr. Fruth and Mr.
Fanning related to the Premier line were knowingly false when made. First, the
complaint alleges Mr. Fruth stated that the Premier line was "getting a great reception" in
the marketplace. ACC ¶ 64; *see also id.* at ¶ 67. Second, the complaint alleges that Mr.
Bender and Mr. Fanning stated that Ocular purposefully managed down its inventory of
Biomedics 55 contact lenses ("55") during the first six months of 2004 in anticipation of
the launch of the Premier line. *Id.* at ¶¶ 64-66. Plaintiffs allege those statements were
false when made because they were contradicted by later public statements. Cooper
issued, and Mr. Bender made, statements indicating that an excess of inventory
developed and continued to exist throughout 2004 which affected the company's

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
         CV 06-306 CJC (RNBx)
         CV 06-331 CJC (ANx)                    Date: October 23, 2007
                                           Page 5

---

earnings. *See id.* at ¶¶ 69-71. Instead of working down its 55 inventory in the first six months of 2004, the inventory was allegedly increasing. *See id.*

Plaintiffs make a number of allegations that support a strong inference that these statements were knowingly false when made. First, Plaintiffs allege that Ocular's inventory levels was or should have been a significant consideration during Cooper's pre-merger due diligence. *Id.* at ¶ 76. Second, Plaintiffs allegations include statements from six confidential witnesses ("CW" or "CWs") describing contemporaneously available information regarding the Premier line. *See id.* at ¶¶ 77-86. The CWs stated that 55 lenses were moved into the trade channel throughout 2004, *see id.* at ¶ 78, that customers did not prefer the Premier, and continued to purchase 55s, *id.* at ¶ 80, and that Ocular purposefully increased its inventory in the trade channels to meet its 2004 revenue projections, *id.* at ¶ 82.

Plaintiffs have sufficiently alleged facts to allow for the use of CWs. The CWs are former Cooper and Ocular employees, and an Ocular customer. *See id.* at ¶¶ 77-86. The positions of the CWs – distribution manager, executive of customer company, key account manager, planning manager and senior inventory manager – are types of individuals who possess the type of information they testify to in the normal course of business. *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004) (requiring the complaint to describe CWs with sufficient particularity to support the probability that a person in the occupied position would possess the information alleged); *see also In re Northpoint Communications Group, Inc., Sec. Litig.*, 221 F. Supp. 2d 1090, 1097 (N.D. Cal. 2002) (stating the statements from CWs support an inference of scienter when they include sufficient particularized detail to discern the informant's basis of knowledge). The statements of the CWs are internally consistent with each other. *See Limantour v. Cray Inc.*, 423 F. Supp. 2d 1129, 1142 (W.D. Was. 2006) (*citing In re Cabletron Sys., Inc.*, 311 F.3d 11, 29-30 (1st Cir. 2002)). Furthermore, the CW statements provide a coherent, plausible explanation for Cooper's continuing inventory problems during and after the Premier launch. *See id*; *In re Daou Systems, Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005). The CW statements are not conclusory allegations contradicting Mr. Bender and others' public statements, but are instead factual accounts of inventory levels and customer reactions to the Premier lenses versus the 55 lenses. *Contra Yourish v. Cal. Amplifier*, 191 F.3d 983, 995 (9th Cir. 1999)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
CV 06-306 CJC (RNBx)
CV 06-331 CJC (ANx)                                  Date: October 23, 2007
Page 6

---

("some detail about the alleged information, other than its substance contradicted the substance of the identified statement, must be provided."). For purposes of the complaint, these statements are sufficiently particular to support Plaintiffs' claims and allow Cooper to formulate a response. *See In re Daou Systems, Inc.*, 411 F.3d at 1015.

The inference of scienter is strengthened when examined in the context of the entire complaint, including insider stock sales.[1]  *See Tellabs*, slip op. at 11. The statements were made as Mr. Bender sought to bolster confidence in Cooper's merger with Ocular. This Court may infer from the allegations that under those circumstances, Mr. Bender and others may have knowingly misstated Ocular's inventory practices and the reception of the Premier line to support the market's acceptance of the merger.

## B.   Statements about Silicon Hydrogel Contact Lenses

Plaintiffs allege that Mr. Bender made a number of false statements about the competitiveness of SH lenses and their impact on Cooper's contact lenses. He said that SH lenses were a niche product line. ACC ¶ 88. He stated that Cooper's product were competing favorably with SH lenses and that SH lenses had no advantage over Cooper's non-SH offerings. *Id.* at ¶ 90. Mr. Bender also said that SH lenses were competing for market share against only other SH lenses, not against the overall market for contact lenses. *Id.* at 94. Plaintiffs allege these statements were false when made because they were directly contradicted by subsequent public statements. Cooper reduced its earning projections later the same year, in part because of the impact of SH lenses on its sales. *Id.* at ¶ 99. Mr. Bender said that this impact was "what [Cooper] had seen all year." *Id.* He also admitted that SH lenses were harming Cooper's sales in the two-week disposable category. *Id.* at ¶ 97.

---

[1] While this Court's July Order held that the stock sales alone did not raise an inference of scienter, Plaintiffs have added allegations (at the Court's suggestions) describing the percentage of each individual's holding that were sold. *See, e.g.*, ACC ¶ 189 (alleging that Mr. Fruth sold 52.46% of his holdings). For purposes of the ACC, the Court need not decide whether the insider sales alone establish an inference of scienter because new allegations remedy the CAC's infirmities by providing more allegations that support an inference of scienter. Simply because insider sales alone cannot establish scienter does not prohibit the Court from considering those sales in an overall assessment of scienter as required under *Tellabs*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
           CV 06-306 CJC (RNBx)
           CV 06-331 CJC (ANx)                         Date: October 23, 2007
                                                      Page 7

---

Plaintiffs again use confidential witness to create a strong inference that these statements were knowingly false when made. From late 2004 into 2005 (and perhaps as early as 2003), salesmen submitted a number of reports red-flagging the impact of SH lenses on sales the sale of Cooper's products. *See id*. at ¶¶ 97, 105, 107. There are also allegations that Mr. Bender read and absorbed these sales reports. *Id*. at ¶ 107. These reports are of the type that the CWs would prepare, describe specific data in those reports and were created based on the personal knowledge of the authors/CWs. *See Nursing Home*, 380 F.3d at 1233; *Northpoint*, 221 F. Supp. 2d at 1097. The CWs' statements are internally consistent with each other. *See Limantour*, 423 F. Supp. 2d at 1142. The CWs' accounts of the impact of SH lenses on Cooper's sales are a plausible explanation for Cooper's decision to restate its earnings: SH lenses *were* taking market share from Cooper despite Mr. Bender's earlier statements to the contrary. Plaintiffs also describe two publicly available industry reports drawing the same conclusions, ACC ¶¶ 103-04, to rebut Defendants' argument that only the CWs held opinions contrary to Mr. Bender's statements. Again, the CWs' statements are sufficiently particular to support Plaintiffs' claims and allow Cooper to formulate a response. *See Daou*, 411 F.3d at 1015. Likewise, the inference of scienter is again bolstered by the overall allegations of the complaint, the merger context, and stock sales by Cooper's officers and directors. *See Tellabs*, slip op. at 11.

### C.   Statements about Ocular and Cooper Sales Force Integration

Plaintiffs allege that two statements about the post-merger integration of Cooper and Ocular's sales forces were false and misleading. Mr. Weiss made a statement implying that the sales force integration process was complete as of (at least) March 2005. ACC ¶ 109. Mr. Bender, speaking in the past tense, also said that the integration process was complete. *Id*. at ¶ 110 ("the integration of the sales teams . . . went beautifully well."). These statements were false when made because later public statements by Cooper in May 2005 indicated the sales force had not been integrated by March 2005. *Id*. at ¶ 112. Statements from CWs support the inference that the problem was not confined to March 2005 and earlier, but instead occurred through the quarter. *See id*. at ¶¶ 114 ("Cooper did not have their 'ducks in a row' until the end of 2005"); 116 ("CW #11 did not recall the Ocular and Cooper sales information system being integrated until summer 2006").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   CV 06-169 CJC (RNBx)
            CV 06-306 CJC (RNBx)
            CV 06-331 CJC (ANx)                           Date: October 23, 2007
                                                                          Page 8

---

As with statements regarding the Premier line and SH lenses, scienter may be inferred from the overall allegations of the complaint. *See Tellabs*, slip op. at 11. This is particularly so here because Cooper touted the cost-saving, synergistic benefits of merging with Ocular. *See* ACC ¶ 11. It may be inferred that the sooner the integration of the sales force was completed in the public's eye, the sooner Cooper's stock price would reap the benefits. Because Mr. Weiss and Mr. Bender spoke publicly as an authority on the status of the merger in March, *id*. at ¶ 109, it is reasonable to infer that they inquired and knew about the true status of the sales force integration. For all these reasons, Plaintiffs have sufficiently alleged facts to support an inference of scienter.

D.    **Sarbanes-Oxley Certifications**

Plaintiffs allege that Cooper's SOX certifications contained a number of false statements with respect to the establishment and maintenance of internal controls and accounting statements. SOX certifications signed by Mr. Bender, Mr. Weiss, and Mr. Neil affirmed the establishment and maintenance of internal controls to ensure they were informed of material financial information. *See id*. at ¶¶ 119-122. This statement was allegedly false when made because Cooper later admitted its internal control over financial reporting was materially deficient. *Id*. at ¶ 123 ("Management concluded that the Company's internal controls over financial reporting was not effective as of October 31, 2005."). The SOX certifications also affirmed that its SEC 10-Q filings over several quarters were based on Generally Accepted Accounting Principles ("GAAP"). *Id*. at ¶¶ 125-29. Those statements were also allegedly false when made because Cooper later amended its filing because it has misallocated merger assets resulting in a significant increase in amortization costs. *Id*. at ¶¶ 132-34.

In the July Order, this Court stated that the restatement alone was not sufficient to establish scienter. Order at 14. Plaintiffs were advised to allege facts to show that "the errors were an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decision if confronted with the same facts." *Id*. (*citing DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (*quoting In re Software Toolworks, Inc.*, 50 F.3d 615, 627-28 (9th Cir. 1994))) (internal quotations

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.   CV 06-169 CJC (RNBx)
CV 06-306 CJC (RNBx)
CV 06-331 CJC (ANx)                         Date: October 23, 2007
Page 9

---

omitted).  Mr. Weiss stated that the accounting error was due to his choice between two different techniques – the market approach versus the income approach.  ACC ¶ 133. The complaint also fell short in alleging that Mr. Bender or Mr. Neil "acted intentionally or with deliberate recklessness, as opposed to ordinary or even gross carelessness, when they signed the inaccurate certifications." *Id.* at 15.  The Court is not convinced that scienter is established simply because Mr. Bender and Mr. Neil affirmed that they established, designed and maintained internal accounting controls as Plaintiffs argue. (Opp. at 9.)  There must be some factual allegation that Defendants knew or recklessly disregarded the ineffectiveness of the controls when they were established, designed or maintained.  Moreover, the Court is reluctant to infer scienter with respect to the SOX certifications from the complaint as a whole without more specific allegations of knowledge or deliberate recklessness.   The merger context alone cannot support an inference of "an egregious refusal to see the obvious."  *DSAM Global Value Fund*, 288 F.3d at 390.

Accordingly, Defendants' motion to dismiss is GRANTED with respect to the SOX allegations.  Plaintiffs are granted leave to amend the ACC to correct the deficiencies.

**E.    Revenue Forecasts**

Finally, Plaintiffs allege that Cooper's revenue projections were false when made. *See, e.g.*, ACC ¶¶ 139-47.  These statements were allegedly false when made because Cooper later restated its earnings and revised its earlier financial statements.  *See, e.g., id.* at ¶¶ 151, 155.  In the July Order, this Court stated that Plaintiffs' claims with respect to revenue forecasts were only actionable if Plaintiffs proved the knowing falsity of the underlying statements.  Order at 17.  Plaintiffs have remedied their allegations of knowingly false statements about Ocular's Premier line, SH lenses and sales force integration.  *See supra*, §§ A – C.  However, Plaintiffs' ACC remains deficient with respect to the SOX certifications.  *See supra*, § D.  To the extent Plaintiffs' revenue forecast allegations rely on the SOX certifications, those allegations are deficient for the reasons previously stated.  Plaintiffs are granted leave to amend the ACC to correct the deficiencies.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.   CV 06-169 CJC (RNBx)
           CV 06-306 CJC (RNBx)
           CV 06-331 CJC (ANx)                              Date: October 23, 2007
                                                            Page 10

---

### Loss Causation

Loss causation is not subject to the PSLRA's stringent pleading requirements; it must be only be set forth in a "short and plain statement" under Federal Rule of Civil Procedure 8(a). *Dura Pharms. Inc., v. Broudo*, 544 U.S. 336, 346 (2005). Plaintiffs have sufficiently pled a short and plain statement that the alleged misrepresentations made by Cooper during and after the merger period artificially inflated the stock price and caused economic loss. *See* ACC ¶¶ 193-207. The complaint details a number of reports from market analysts repeating the allegedly false statements as basis for a recommendation to purchase shares of Cooper. *See, e.g., id.* at ¶¶ 89, 93. Plaintiffs then allege in detail how true information slowly leaked into the public marketplace and the price of Cooper's stock declined accordingly. *See id.* at ¶ 202. Plaintiffs discount a number of other possible reasons for the stock's decline, such as changed market conditions. *Id.* at ¶ 206. Construing all of the Plaintiffs' allegations in the light most favorable to them, the allegations of loss causation in the ACC are sufficient to survive a motion to dismiss. *See Dura Pharms.*, 544 U.S. at 346.

### Section 20(a) claims

In order to state a violation of § 20(a), Plaintiffs must allege both a violation of § 10(b) and that the defendant exercised actual power or control over the primary violator. *See Hollinger v. Tital Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc). As Plaintiffs have validly pled a § 10(b) claim (with the limited deficiencies noted above), Plaintiffs need only put forth a short, plain statement under Rule 8(a) that each individual defendant exercised actual power over Cooper's operations. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "Day-to-day oversight of company operations and involvement in the financial statements at issue" are sufficient to presume control over the transactions which allegedly violate § 10(b). *Id.* (*citing Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) *impliedly overruled on other grounds by Hollinger, supra*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 06-169 CJC (RNBx)
           CV 06-306 CJC (RNBx)
           CV 06-331 CJC (ANx)                    Date: October 23, 2007
                                                         Page 11

---

Mr. Bender served as Chairman, President and CEO during the class period. ACC ¶ 32. Mr. Fruth was a director of Ocular. *Id.* at ¶ 35. Mr. Weiss was Cooper Executive Vice President and Chief Operating Officer. *Id.* at ¶ 36. Mr. Neil was Cooper's Vice President and Chief Financial Officer. *Id.* at ¶ 39. Plaintiffs have alleged, at the least, that Mr. Bender, Mr. Weiss, Mr. Fruth and Mr. Neil signed SOX certifications which were false or misleading. *Id.* at  ¶ 118 (Bender, Fruth and Weiss); ¶ 119 (Bender and Weiss);  ¶ 120 (Bender and Neil); ¶ 121 (same); ¶ 122 (same). Mr. Fryling served a President and Chief Operating Officer of Coopervision during the class period. *Id.* at ¶ 42. Mr. Fryling made allegedly false statements about the impact of SH lenses on Cooper's products. *Id.* at ¶ 184. Those statements were later publicly reported by Wachovia. *Id.*

For purposes of a motion to dismiss, Plaintiffs allegations are sufficient. First, "where the corporate officers are a narrowly defined group charged with day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violations. *Wool*, 818 F.3d at 1441. Here, the allegations focus on Cooper's CEO, COO and CFO, a director and former President of Ocular, and the President and CEO of the CooperVision division. It is reasonable for this Court to infer for purposes of a motion to dismiss that these individuals have "the power to control or influence" the conduct and actions at issue. *See id.* Moreover, whether a particular defendant controls a corporation is "an intensely factual question," *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994), and is more appropriately determined by motion for summary judgment where evidence may be considered. For these reasons, Plaintiffs' § 20(a) claims are sufficient to survive a motion to dismiss. *See Wool*, 818 F.3d at 1441.

**Conclusion**

Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART and DENIED IN PART. Plaintiff is granted leave to amend the ACC with respect to the allegations of false and misleading SOX certifications only and the forecasting allegations relating thereto.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.   CV 06-169 CJC (RNBx)
         CV 06-306 CJC (RNBx)
         CV 06-331 CJC (ANx)         Date: October 23, 2007
                                           Page 12

---

    Plaintiffs have twenty days leave to amend its complaint consistent with this order. Defendants have twenty days thereafter to file a responsive pleading. This schedule may be modified by mutual consent of the parties.

sdt

MINUTES FORM 11
CIVIL-GEN                        Initials of Deputy Clerk