ROBBINS GELLER RUDMAN
   & DOWD LLP
KEITH F. PARK (54275)
X. JAY ALVAREZ (134781)
JONAH H. GOLDSTEIN (193777)
G. PAUL HOWES (187772)
RYAN A. LLORENS (225196)
DARRYL J. ALVARADO (253213)
MAUREEN E. MUELLER (253431)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
keithp@rgrdlaw.com
jaya@rgrdlaw.com
jonahg@rgrdlaw.com
paulh@rgrdlaw.com
ryanl@rgrdlaw.com
dalvarado@rgrdlaw.com
mmueller@rgrdlaw.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re COOPER COMPANIES, INC. SECURITIES LITIGATION | No. SACV-06-00169-CJC(RNBx) |
| | CLASS ACTION |
| This Document Relates To:<br><br>   ALL ACTIONS. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

DATE:    December 13, 2010
TIME:    1:30 p.m.
COURTROOM:  9B The Honorable
                Cormac J. Carney

576921_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................. 1

II. AWARD OF ATTORNEYS' FEES ................................................ 4

    A. The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award ....................... 4

        1. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ................................................................. 4

        2. A Fee of 24.3 Percent of the Fund Created Is Reasonable ........ 7

    B. Consideration of the Relevant Factors Used by Courts in the Ninth Circuit Justifies a Fee Award of 24.3 Percent in This Case ............................................................................................ 8

        1. The Result Achieved ........................................................... 8

        2. The Risks of Litigation ....................................................... 9

        3. The Quality of the Representation ..................................... 11

        4. The Novelty and Difficulty of the Questions Presented .......... 12

        5. The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs' Lead Counsel ......................... 13

        6. A 24.3 Percent Fee Award Is Consistent With Fees Awarded in Similar Complex Class Action Litigation ............. 15

        7. The Customary Fee .......................................................... 18

        8. Reaction of the Class and the Approval of the Requested Percentage by the Lead Plaintiffs Supports the Award of a 24.3 Percent Fee .......................................................... 19

III. THE REQUESTED FEE IS REASONABLE UNDER A LODESTAR CROSS-CHECK .......................................................... 20

IV. THE REQUESTED EXPENSES SHOULD BE AWARDED ........... 22

    A. Plaintiffs' Lead Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained ................. 22

    B. Lead Plaintiff's Expenses in Representing the Class Should Be Awarded .................................................................................. 24

V. CONCLUSION .............................................................................. 24

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Abrams v. Lightolier Inc.,*
5      50 F.3d 1204 (3d Cir. 1995) ...................................................................22

6

*Anixter v. Home-Stake Prod. Co.,*
7      77 F.3d 1215 (10th Cir. 1996) ...............................................................14

8

*Arenson v. Bd. of Trade,*
9      372 F. Supp. 1349 (N.D. Ill. 1974) .........................................................12

10

*Atlas v. Accredited Home Lenders Holding Co.,*
       No. 07-CV-00488-H (CAB),
11     2009 U.S. Dist. LEXIS 103035
       (S.D. Cal. Nov. 4, 2009) ...........................................................................1
12

13

*Backman v. Polaroid Corp.,*
14     910 F.2d 10 (1st Cir. 1990) ....................................................................14

15

*Behrens v. Wometco Enters., Inc.,*
       118 F.R.D. 534 (S.D. Fla. 1988),
16     *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..........................................................8

17

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
18     603 F.2d 263 (2d Cir. 1979) ..................................................................14

19

*Blum v. Stenson,*
20     465 U.S. 886, 104 S. Ct. 1541,
       79 L. Ed. 2d 891 (1984) .....................................................................5, 18
21

22

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,*
       8 F.3d 722 (10th Cir. 1993) ...................................................................22
23

24

*Broderick v. Mazur,*
       No. CV-98-1658-MRP(AJWx),
25     slip op. (C.D. Cal. Apr. 26, 2004) ..........................................................16

26

*Brown v. Phillips Petroleum Co.,*
27     838 F.2d 451 (10th Cir. 1988) ..................................................................5

28

1
2                                                                          **Page**
3
*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ................................................................5

*Cent. R.R. & Banking Co. v. Pettus,*
    113 U.S. 116, 5 S. Ct. 387,
    28 L. Ed. 915 (1885) ................................................................................4

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336, 125 S. Ct. 1627,
    161 L. Ed. 2d 577 (2005) .......................................................................12

*Geffon v. Micrion Corp.,*
    249 F.3d 29 (1st Cir. 2001) ...................................................................15

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    741 F. Supp. 84 (S.D.N.Y. 1990) ..........................................................23

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000) ......................................................................5

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...................................................................5

*Gottlieb v. Wiles,*
    150 F.R.D. 174 (D. Colo. 1993),
    *rev'd on other grounds sub nom.*
    *Gottlieb v. Barry,* 43 F.3d 474 (10th Cir. 1994) ...................................23

*Greebel v. FTP Software, Inc.,*
    194 F.3d 185 (1st Cir. 1999) ..................................................................15

*Green v. Nuveen Advisory Corp.,*
    295 F.3d 738 (7th Cir. 2002) .................................................................15

*Harman v. Lyphomed, Inc.,*
    945 F.2d 969 (7th Cir. 1991) ...................................................................5

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .....................................................................22
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

*Hensley v. Eckerhart,*
    461 U.S. 424, 103 S. Ct. 1933,
    76 L. Ed. 2d 40 (1983) ............................................................8, 21

*In re Accelerated Networks, Inc. Sec. Litig.,*
    No. CV-01-3585-SJO(MANx),
    slip op. (C.D. Cal. June 28, 2004) ............................................17

*In re Aetna Inc. Sec. Litig.,*
    No. MDL 1219, 2001 U.S. Dist. LEXIS 68
    (E.D. Pa. Jan. 4, 2001) .............................................................21

*In re Alliance Gaming Corp. Sec. Litig.,*
    No. CV-S-04-0821-BES-PAL,
    slip op. (D. Nev. June 22, 2007) ..............................................17

*In re AMERCO Sec. Litig.,*
    No. 04-2182-PHX-RJB,
    slip op. (D. Ariz. Nov. 2, 2006) ..............................................16

*In re Apollo Group, Inc. Sec. Litig.,*
    No. CV 04-2147-PHX-JAT,
    2008 U.S. Dist. LEXIS 61995
    (D. Ariz. Aug. 4, 2008) ...........................................................14

*In re Apple Computer Sec. Litig.,*
    No. C-84-20148(A)-JW,
    1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) .........................................................15

*In re Brocade Sec. Litig.,*
    No. C 05-02042 CRB,
    slip op. (N.D. Cal. Jan. 26, 2009) ...........................................16

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) ....................................................20

*In re Charlotte Russe Holding, Inc. Sec. Litig.,*
    No. 04cv2528BTM(WMc),
    slip op. (S.D. Cal. Aug. 29, 2006) ...........................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iv -

1

2                                                                                          **Page**

3  *In re Comshare Inc. Sec. Litig.,*
4       183 F.3d 542 (6th Cir. 1999) ................................................................... 15

5  *In re Cont'l Ill. Sec. Litig.,*
6       962 F.2d 566 (7th Cir. 1992) ......................................................... 6, 18, 23

7  *In re Digi Int'l, Inc. Sec. Litig.,*
8       14 Fed. Appx. 714 (8th Cir. 2001) ...................................................... 15

*In re Global Crossing Sec. & ERISA Litig.,*
9       225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 20

10 *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.,*
11      No. 02-ML-1475-DT(RCx),
12      2005 U.S. Dist. LEXIS 13627
         (C.D. Cal. June 10, 2005) ........................................................ 10, 11, 16
13
   *In re Ikon Office Solutions, Inc., Sec. Litig.,*
14      194 F.R.D. 166 (E.D. Pa. 2000) ...................................................... 10, 18
15
   *In re Infonet Serv. Corp. Sec. Litig.,*
16      No. CV-01-10456-NM(CWx),
17      slip op. (C.D. Cal. July 26, 2004) ...................................................... 17

18 *In re Intermune, Inc. Sec. Litig.,*
19      No. C-03-2954-SI,
        slip op.(N.D. Cal. Aug. 26, 2005).......................................................... 17
20
   *In re Intershop Commc'ns AG Sec. Litig.,*
21      No. C-01-20333-JW,
22      slip op. (N.D. Cal. Dec. 5, 2005) ...................................................... 17

23 *In re JDS Uniphase Corp. Sec. Litig.,*
24      No. C-02-1486 CW (EDL),
        2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ................................. 14
25
   *In re King Res. Co. Sec. Litig.,*
26      420 F. Supp. 610 (D. Colo. 1976) ............................................... 8, 10, 12

27

28

576921_1

1
2                                                                                    **Page**

3  *In re M.D.C. Holdings Sec. Litig.*,
4      No. CV 89-0090 E (M),
       1990 U.S. Dist. LEXIS 15488
5      (S.D. Cal. Aug. 30, 1990) ........................................................................ 18

6  *In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
7      842 F. Supp. 733 (S.D.N.Y. 1994) ...........................................................23

8  *In re Media Vision Tech. Sec. Litig.*,
9      913 F. Supp. 1362 (N.D. Cal. 1996)................................................22, 23

10  *In re Network Assocs. Sec. Litig.*,
11      76 F. Supp. 2d 1017 (N.D. Cal. 1999)......................................................20

12  *In re PETCO Corp. Sec. Litig.*,
        No. 05-CV-0823 H(RBB),
13      slip op. (S.D. Cal. Sept. 2, 2008) ............................................................16

14  *In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
15      No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) .........................14

16  *In re Rite Aid Corp. Sec. Litig.*,
17      269 F. Supp. 2d 603 (E.D. Pa. 2003),
        *vacated on other grounds*,
18      396 F.3d 294 (3d Cir. 2005) ....................................................................21

19  *In re Rite Aid Corp. Sec. Litig.*,
20      396 F.3d 294 (3d Cir. 2005) .............................................15, 16, 20

21  *In re SeraCare Life Sciences, Inc. Sec. Litig.*,
22      No. 05-CV-2335-H(CAB),
        slip op. (S.D. Cal. Sept. 4, 2007) ............................................................17
23
24  *In re Specialty Labs., Inc. Sec. Litig.*,
        No. CV 02-04352-DDP(RCx),
25      slip op. (C.D. Cal. Dec. 22, 2004) ...........................................................17

26  *In re Sumitomo Copper Litig.*,
27      74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................................21

28

Page

*In re Sunterra Corp. Sec. Litig.*,
    No. 2:06-cv-00844-BES-RJJ,
    slip op. (D. Nev. Feb. 10, 2009) ................................................................ 16

*In re Surebeam Corp. Sec. Litig.*,
    No. 03-CV-01721-JM(POR),
    slip op. (S.D. Cal. July 17, 2006) .............................................................. 17

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ...................................................................... 18

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) ...................................................................... 18

*In re Terayon Commc'n Sys., Inc. Sec. Litig.*,
    No. C-00-1967-MHP,
    slip op. (N.D. Cal. Sept. 28, 2007) ............................................................ 16

*In re Titan, Inc. Sec. Litig.*,
    No. 04-CV-0676-LAB(NLS),
    slip op. (S.D. Cal. Dec. 19, 2005) .............................................................. 17

*In re U.S. Aggregates, Inc. Sec. Litig.*,
    No. C-01-1688-CW,
    slip op. (N.D. Cal. April 6, 2006) .............................................................. 17

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................................................... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................*passim*

*In re Wireless Facilities, Inc. Sec. Litig.*,
    No. 04cv1589 NLS,
    slip op. (S.D. Cal. Jan. 13, 2009) .............................................................. 16

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................... 21

576921_1

- vii -

**Page**

*J.N. Futia Co. v. Phelps Dodge Indus., Inc.,*
  No. 78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261
  (S.D.N.Y. Sept. 17, 1982)...........................................................................11

*Johnson v. Ga. Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ....................................................................12

*Kirchoff v. Flynn,*
  786 F.2d 320 (7th Cir. 1986).......................................................................6

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,*
  540 F.2d 102 (3d Cir. 1976) ........................................................................9

*Longman v. Food Lion, Inc.,*
  197 F.3d 675 (4th Cir. 1999) .....................................................................15

*Miltland Raleigh-Durham v. Myers,*
  840 F. Supp. 235 (S.D.N.Y. 1993) ...........................................................22

*Paul, Johnson, Alston & Hunt v. Graulty,*
  886 F.2d 268 (9th Cir. 1989) ..........................................................4, 5, 7, 12

*Phemister v. Harcourt Brace Jovanovich, Inc.,*
  No. 77 C 39, 1984 U.S. Dist. LEXIS 23595
  (N.D. Ill. Sept. 14, 1984) .............................................................................6

*Phillips v. LCI Int'l, Inc.,*
  190 F.3d 609 (4th Cir. 1999) .....................................................................15

*Powers v. Eichen,*
  229 F.3d 1249 (9th Cir. 2000) .....................................................................8

*Robbins v. Koger Props.,*
  116 F.3d 1441 (11th Cir. 1997) .................................................................15

*Shuster v. Symmetricom, Inc.,*
  35 Fed. Appx. 705 (9th Cir. 2002) ............................................................15

*Six Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) .....................................................................5

576921_1

1
2                                                                                    **Page**
3   *Swedish Hosp. Corp. v. Shalala,*
4       1 F.3d 1261 (D.C. Cir. 1993)..................................................5

5   *Thornberry v. Delta Air Lines,*
        676 F.2d 1240 (9th Cir. 1982),
6       *vacated on other grounds,*
7       461 U.S. 952 (1983)........................................................23

8   *Torrisi v. Tucson Elec. Power Co.,*
9       8 F.3d 1370 (9th Cir. 1993) ............................................5, 7

10  *Trustees v. Greenough,*
11      105 U.S. 527, 26 L. Ed. 1157 (1882) ................................4

12  *Vincent v. Hughes Air W., Inc.,*
        557 F.2d 759 (9th Cir. 1977)..........................................4
13

14  *Vizcaino v. Microsoft Corp.,*
        142 F. Supp. 2d 1299 (W.D. Wash. 2001) ......................12
15

    *Vizcaino v. Microsoft Corp.,*
16      290 F.3d 1043 (9th Cir. 2002) ..........................5, 16, 18, 21

17  **STATUTES, RULES AND REGULATIONS**

18  15 U.S.C.
19      §78u-4 ........................................................................2
        §78u-4(a)(4) ..............................................................24
20      §78u-4(a)(6) ..............................................................7

21  **LEGISLATIVE HISTORY**

22
23  H.R. Conf. Rep. No. 104-369 (1995),
        1995 WL 709276 (1995) ..............................................20
24

25
26
27
28

| | Page |
|---|---|
| 1 | |
| 2 | |

**SECONDARY AUTHORITIES**

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*,
     86 Colum. L. Rev. 669 (May 1986) ..................................................7

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
     §1.09 ..........................................................................................9

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?*
     (NERA Nov. 1996)........................................................................15

Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*
     (NERA Apr. 2006)........................................................................10

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the Lodestar Method: You Can't Get There from Here*,
     74 Tul. L. Rev. 1809 (June 2000)..................................................7

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*
     (Federal Judicial Center 1996) ......................................................15

Richard Posner, *Economic Analysis of Law*
     §21.9 (3d ed. 1986)......................................................................13

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
     108 F.R.D. 237 (Oct. 8, 1985) ........................................................5

## I.    INTRODUCTION

Plaintiffs' Lead Counsel respectfully submits this memorandum of points and authorities in support of its request for an award of attorneys' fees of 24.3% of the $27,000,000 Settlement Fund plus its litigation expenses of $1,463,217.47, plus interest on both amounts at the same rate and for the same period of time as that earned by the Settlement Fund until paid.[1]  In addition, one of the Lead Plaintiffs, UNITE HERE National Retirement Fund ("UNITE") seeks reimbursement of expenses it incurred in representing the Class.  The substantial and certain recovery obtained for the Class after over four years of litigation – an all cash recovery of $27,000,000 – was achieved through the skill, effort, tenacity, and effective advocacy of Plaintiffs' Lead Counsel.  Plaintiffs' Lead Counsel's efforts to date have been without compensation of any kind and the fee has always been wholly contingent upon the result achieved.[2]

The requested fee is consistent with the Ninth Circuit's 25% "benchmark" fee in similar actions, as well as numerous decisions throughout the country, and is the appropriate method of compensating counsel.  *See Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 U.S. Dist. LEXIS 103035, at *16 (S.D. Cal. Nov. 4, 2009).  The amount requested is especially warranted in light of the

---

[1]    Submitted herewith in support of approval of the proposed settlement is the Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds (the "Settlement Brief") and the Declaration of X. Jay Alvarez in Support of Motion for Final Approval of Settlement, Plan of Allocation of Settlement Proceeds, and Award of Attorneys' Fees and Expenses ("Alvarez Declaration"), which more fully describes the history of the Litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the settlement, the substantial risks of the Litigation, and the reasonableness of the fee request.  Also submitted herewith is the Declaration of Keith F. Park Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Park Decl.") setting forth the time committed to and the expenses incurred in prosecuting the Litigation, as well as declarations of each of the Lead Plaintiffs.

[2]    All capitalized terms not defined herein have the same meanings set forth in the Stipulation of Settlement dated as of July 28, 2010.

576921_1

1  substantial obstacles presented in the prosecution of this Litigation, the extensive

2  efforts of Plaintiffs' Lead Counsel since the Litigation's inception, the contingent

3  nature of counsel's representation, and the favorable result obtained for the Class.

4       The Litigation is subject to the provisions of the Private Securities Litigation

5  Reform Act of 1995 ("PSLRA") and, therefore, was extremely risky and difficult from

6  the outset.  15 U.S.C. §78u-4.  The effect of the PSLRA is to make it harder for

7  investors to bring and successfully resolve securities class actions.  Lead Plaintiffs and

8  their counsel were mindful of the fact that, as a result of the PSLRA, they would face

9  many developing and complex issues with the very real risk of being dismissed at the

10  pleading stage.  Indeed, a portion of this case was dismissed upon Defendants'

11  motions to dismiss.

12       The prosecution and settlement of this Litigation required great skill and

13  extensive efforts by Plaintiffs' Lead Counsel.  During the course of the Litigation,

14  Plaintiffs' Lead Counsel, among other things (1) reviewed and analyzed voluminous

15  publicly filed documents, financial reports, analysts' reports, and press releases

16  concerning The Cooper Companies, Inc. ("Cooper"); (2) consulted with forensic

17  accountants and experts in damages, loss causation, and materiality; (3) thoroughly

18  researched the law pertinent to the claims and defenses asserted; (4) filed fact-specific

19  complaints; (5) briefed Defendants' motions to dismiss and largely defeated

20  Defendants' challenges to the pleadings; (6) fully briefed Lead Plaintiffs' successful

21  motion for class certification; (7) responded to discovery propounded by Defendants;

22  (8) reviewed and analyzed over 6.7 million pages of documents produced by

23  Defendants and third parties; (9) took and/or defended 25 depositions; (10)

24  successfully opposed Defendants' motions for summary judgment; (11) prepared

25  substantially for trial; and (12) engaged in arm's-length negotiations with Defendants

26  to settle the case, including two mediation sessions with the Honorable Layn R.

27

28

576921_1

Phillips (Ret.), a highly respected mediator with extensive experience in the mediation of complex actions.[3]  In total, Plaintiffs' Lead Counsel and its paraprofessionals spent 28,313.50 hours in the prosecution of this Litigation for over four years, with a resulting lodestar of $12,815,180.00.  The requested fee, therefore, represents a 49% *discount* from the lodestar.

Plaintiffs' Lead Counsel undertook the representation of the Class on a contingent-fee basis and no payment has been made to Plaintiffs' Lead Counsel to date for its services or for the litigation expenses it has incurred on behalf of the Class for the last four-year period.  Plaintiffs' Lead Counsel firmly believes that the settlement is the result of its creative and diligent services, as well as its reputation as attorneys who are unwavering in its dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues, which were opposed by highly skilled and experienced defense counsel, Plaintiffs' Lead Counsel succeeded in securing a very good result for the Class under difficult and challenging circumstances.

For the reasons set forth herein and in the Alvarez Declaration, Plaintiffs' Lead Counsel respectfully submits that the attorneys' fees and expenses requested are fair and reasonable under the applicable legal standards and when considered in light of the contingency risk undertaken, the diligent efforts of counsel, and the substantial and certain benefits obtained.  Thus, they should be awarded by the Court.

---

[3]     The efforts of Plaintiffs' Lead Counsel in achieving this result are set forth in greater detail in the Alvarez Declaration.

- 3 -

576921_1

## II.   AWARD OF ATTORNEYS' FEES

### A.   The Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases Support the Requested Award

#### 1.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Plaintiffs' Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. The percentage method of awarding fees has become an accepted, if not the prevailing method, for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized in equity that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). This rule, known as the common fund doctrine, is firmly rooted in American case law. *See, e.g., Trustees v. Greenough*, 105 U.S. 527, 26 L. Ed. 1157 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885).[4]

---

[4]   In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed "reasonable" under the circumstances.

*Id.* at 271 (citations omitted, emphasis in original).

576921_1

1    In *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 1550, 79 L. Ed. 2d

2   891, 903 (1984), the Supreme Court recognized that under the "common fund

3   doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the

4   class." In this Circuit, the district court has discretion to award fees in common fund

5   cases based on either the so-called lodestar/multiplier method or the percentage-of-

6   the-fund method. *WPPSS*, 19 F.3d at 1296. In *Paul, Johnson*, 886 F.2d 268, *Six*

7   *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v.*

8   *Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft*

9   *Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of

10   the percentage method in common fund cases. Moreover, supporting authority for the

11   percentage method in other circuits is overwhelming.[5]

12    Since *Paul, Johnson* and its progeny, district courts in this Circuit have almost

13   uniformly shifted to the percentage method in awarding fees in common fund cases.

14   The rationale for compensating counsel in common fund cases on a percentage basis

15   is sound. First, it is consistent with the practice in the private marketplace where

16   contingent fee attorneys are customarily compensated by a percentage of the

17   recovery.[6] Second, it more closely aligns the lawyers' interest in being paid a fair fee

18   _____

19   [5]    Courts in other circuits favor the percentage-of-recovery approach for the award
20   of attorneys' fees in common fund cases. Two circuits have ruled that the ***percentage
      method is mandatory in common fund cases***. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d
21   1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th
      Cir. 1991). Other circuits and commentators have expressly approved the use of the
22   percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips
      Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum*
23   recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable
      in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir.
24   1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); and Report of
      the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254
25   (Oct. 8, 1985).

26   [6]    Courts are encouraged to look to the private marketplace in setting a percentage
      fee:

27            The judicial task might be simplified if the judge and the lawyers
28          [spent] their efforts on finding out what the market in fact pays not for

- 5 -

576921_1

1   with the interest of the class in achieving the maximum possible recovery in the

2   shortest amount of time.[7]  Indeed, one of the nation's leading scholars in the field of

3   class actions and attorneys' fees, Professor Charles Silver of the University of Texas

4   School of Law, has concluded that the percentage method of awarding fees is the *only*

5   method of fee awards that is consistent with class members' due process rights.

6   Professor Silver notes:

7          The consensus that the contingent percentage approach creates a

8      closer harmony of interests between class counsel and absent plaintiffs

9      than the lodestar method is strikingly broad.  It includes leading

10     academics, researchers at the RAND Institute for Civil Justice, and many

11     judges, including those who contributed to the Manual for Complex

12     Litigation, the Report of the Federal Courts Study Committee, and the

13     report of the Third Circuit Task Force.  Indeed, it is difficult to find

14

15     the individual hours but for the ensemble of services rendered in a case
       of this character.  This was a contingent fee suit that yielded a recovery

16     for the "clients" (the class members) of $45 million.  The class counsel
       are entitled to the fee they would have received had they handled a

17     similar suit on a contingent fee basis, with a similar outcome, for a
       paying client.  Suppose a large investor had sued Continental for

18     securities fraud, and won $45 million.  What would its lawyers have
       gotten pursuant to their contingent fee contract?

19   *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). *See also Phemister v.*

20   *Harcourt Brace Jovanovich, Inc.*, No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40-
     *41 (N.D. Ill. Sept. 14, 1984).

21   [7]   In *Kirchoff v. Flynn*, 786 F.2d 320, 325, 326 (7th Cir. 1986), the court stated:

22         The contingent fee uses private incentives rather than careful
       monitoring to align the interests of lawyer and client.  The lawyer gains

23     only to the extent his client gains. . . . The unscrupulous lawyer paid by
       the hour may be willing to settle for a lower recovery coupled with a

24     payment for more hours.  Contingent fees eliminate this incentive and
       also ensure a reasonable proportion between the recovery and the fees

25     assessed to defendants. . . .

26         At the same time as it automatically aligns interests of lawyer and
       client, rewards exceptional success, and penalizes failure, the contingent

27     fee automatically handles compensation for the uncertainty of litigation.

28

576921_1

anyone who contends otherwise.  No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.

In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.  The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives.  The contingent percentage approach accomplishes this.

Charles Silver, *CLASS ACTIONS IN THE GULF SOUTH SYMPOSIUM: Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June 2000) (footnotes omitted).[8]  This is particularly appropriate in PSLRA cases where Congress recognized the propriety of the percentage method of fee awards.[9]

### 2.    A Fee of 24.3 Percent of the Fund Created Is Reasonable

In *Paul, Johnson*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees.  886 F.2d at 272; *see also Torrisi*, 8 F.3d at

---

[8]    Professor Coffee also argues that a percentage of the recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing.  The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring.  Ultimately, this "deregulatory" approach is the only alternative . . . .

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney:  The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (May 1986).

[9]    "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).

576921_1

1  1376 (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

2  2000) (same).  The guiding principle in this Circuit is that a fee award be "'reasonable

3  under the circumstances.'"  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).

4  In view of the result obtained, the contingent fee risk and the financial commitment of

5  Plaintiffs' Lead Counsel, an award of 24.3%, slightly below this benchmark, of the

6  recovery obtained for the Class is appropriate.

7      **B.      Consideration of the Relevant Factors Used by Courts in
            the Ninth Circuit Justifies a Fee Award of 24.3 Percent in
8            This Case**

9          Plaintiffs' Lead Counsel submits that, as the factors discussed below

10  demonstrate, attorneys' fees of 24.3% of the fund recovered for the Class are

11  reasonable under the circumstances of this case and should be approved.

12          **1.      The Result Achieved**

13          Courts have consistently recognized that the result achieved is a major factor to

14  be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.

15  Ct. 1933, 1941, 76 L. Ed. 2d 40, 52 (1983) ("most critical factor is the degree of

16  success obtained"); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo.

17  1976) ("the amount of the recovery, and end result achieved are of primary

18  importance, for these are the true benefit to the client"); *Behrens v. Wometco Enters.,*

19  *Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a

20  case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d

21  21 (11th Cir. 1990).

22          Here, a certain and substantial recovery of $27,000,000 in cash has been

23  obtained solely through the efforts of Plaintiffs' Lead Counsel without the substantial

24  expense, delay, risk, and uncertainty of continued litigation and trial, and without the

25  benefit of any parallel governmental proceedings.[10]  As a result of the settlement,

26  _____

27  [10]     Professor Conte acknowledged the propriety of reasonable fees in common fund

28  cases:

576921_1

1  Class Members will receive compensation for their losses in Cooper common stock

2  and avoid the substantial expense and uncertainty of continued litigation against the

3  Defendants.

4      In fact, this Court in its August 16, 2010 Order Granting Plaintiffs' Motion to

5  Preliminarily Approve Settlement ("Order") found that the settlement was reasonable.

6  The Court found:

7      The amount offered in settlement is also reasonable.  Under the

8      terms of the agreement, Defendants will pay $27,000,000. This is a large

9      sum.  Given the risks inherent in continuing to litigate this case, and the

10     benefit to Defendants of ending the matter, this sum is fair and

11     reasonable.

12  Order at 5.  When measured against the results in other cases, Plaintiffs' Lead Counsel

13  achieved a very good recovery for Class Members.

14          **2.      The Risks of Litigation**

15     Numerous cases have recognized that risk is an important factor in determining

16  a fair fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1301; *Lindy Bros. Builders v. Am.*

17  *Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976).  Uncertainty

18  that an ultimate recovery would be obtained is highly relevant in determining risk.

19  *WPPSS*, 19 F.3d at 1300; *Lindy*, 540 F.2d at 117.  As the court aptly observed in *King*

20  *Resources*:

21  _____

22     [C]ourts have been careful to award a fully compensable reasonable fee
       based on the underlying economic inducement for class action lawyers to
23     pursue potentially expensive or complex common fund class litigation.
       These lawyers assume the risk of no compensation unless they
24     successfully confer common fund benefits on the class, based on their
       reasonable expectation that they will share in the recovery in a fair
25     proportion, in contrast to receiving a fee based initially on time-
       expended criteria that fail to give the ***results obtained*** factor primary
26     consideration.

27  1 Alba Conte, *Attorney Fee Awards* §1.09, at 16 (2d ed. 1993) (emphasis in original).

28

576921_1

1        The litigation also involved unique and substantial issues of law in

2    the technical area of SEC Rule 10b-5, . . . difficult, complex and oft-

3    disputed class action questions, and difficult questions regarding

4    computation of damages.

5                    * * *

6        In evaluating the services rendered in this case, appropriate

7    consideration must be given to the risks assumed by plaintiffs' counsel in

8    undertaking the litigation.  The prospects of success were by no means

9    certain at the outset, and indeed, the chances of success were highly

10    speculative and problematical.

11  420 F. Supp. at 632, 636-37.  *See also In re Heritage Bond Litig. v. U.S. Trust Co. of*

12  *Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D.

13  Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of

14  non-payment or reimbursement of expenses, is a factor in determining counsel's

15  proper fee award.").

16        As set forth in the Alvarez Declaration, substantial risks and uncertainties were

17  present from the outset of this Litigation that made it far from certain that any

18  recovery for the Class would be obtained.  While courts have always recognized that

19  securities class actions carry significant risks, post-PSLRA rulings make it clear that

20  the risk of no recovery (and hence no fee) has increased exponentially.  Courts have

21  noted that "securities actions have become more difficult from a plaintiff's perspective

22  in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D.

23  166, 194 (E.D. Pa. 2000).  According to an April 2006 NERA study, dismissal rates

24  have doubled since the PSLRA, accounting for 40.3% of dispositions.  *See* Ronald I.

25  Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder*

26  *Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 4

27  (NERA Apr. 2006).

28

576921_1

1    Although the majority of Lead Plaintiffs' claims ultimately got past the

2    pleading stage, very difficult issues of proof remained as to key elements of the

3    remaining claims.  As discussed in more detail in the Settlement Brief and Alvarez

4    Declaration, the parties strenuously disputed liability, damages, and especially scienter

5    and loss causation.  The Defendants asserted substantive defenses to Lead Plaintiffs'

6    allegations, filed motions for summary judgment meticulously challenging Lead

7    Plaintiffs' evidence, and still deny any wrongdoing.  Although Lead Plaintiffs largely

8    prevailed, it is quite possible that at trial a jury may have sided with Defendants and

9    the Class would have recovered nothing.  Given the inherent complexities of a

10   securities class action, the added difficulties faced in bringing cases under the PSLRA,

11   and the riskiness of this Litigation, the fee requested is fair.

12          **3.     The Quality of the Representation**

13          The "'prosecution and management of a complex national class action requires

14   unique legal skills and abilities.'"  *Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at

15   *39 (citation omitted).  Plaintiffs' Lead Counsel is a nationally known leader in the

16   fields of securities class actions and complex litigation.  The quality of the

17   representation is demonstrated by the certain and substantial benefit achieved for the

18   Class and the efficient and effective prosecution and resolution of the Litigation under

19   difficult and challenging circumstances.  From the outset of this Litigation, Plaintiffs'

20   Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the

21   Class.  Plaintiffs' Lead Counsel spared no expense and marshaled considerable

22   resources and time in the research, investigation, and uncovering of facts.  Based upon

23   Plaintiffs' Lead Counsel's diligent efforts on behalf of the Class and its skill and

24   reputation, Plaintiffs' Lead Counsel was able to negotiate a highly favorable result

25   under difficult and challenging circumstances.  Such quality, efficiency, and

26   dedication should be rewarded.  *E.g.*, *J.N. Futia Co. v. Phelps Dodge Indus., Inc.*, No.

27   78 Civ. 4547, 1982 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 17, 1982).

28

576921_1

1      The quality of opposing counsel is also important when the court evaluates the

2  services rendered by plaintiffs' counsel.  *See, e.g., In re Warner Commc'ns Sec. Litig.*,

3  618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *King Res.*,

4  420 F. Supp. at 634; *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1351 (N.D. Ill.

5  1974).  Nationally known, prominent, and extremely capable counsel from two of the

6  most respected law firms in the country – Latham & Watkins LLP and Morrison &

7  Foerster, LLP – represented Defendants.  The ability of Plaintiffs' Lead Counsel to

8  obtain a favorable result for the Class in the face of such formidable opposition further

9  evidences the quality of its work.

10             **4.      The Novelty and Difficulty of the Questions Presented**

11      Courts have recognized that the novelty and difficulty of the issues in a case are

12  significant factors to be considered in making a fee award.  *See, e.g., Vizcaino v.

13  Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001); *Johnson v. Ga.

14  Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  As the *Johnson* court stated:

15          Cases of first impression generally require more time and effort on the

16          attorney's part.  Although this greater expenditure of time in research

17          and preparation is an investment by counsel in obtaining knowledge

18          which can be used in similar later cases, he should not be penalized for

19          undertaking a case which may "make new law."  Instead, he should be

20          appropriately compensated for accepting the challenge.

21  488 F.2d at 718.

22      In addition to being factually and technically complex, this case also involved

23  numerous complex questions of law under the PSLRA, in particular the application of

24  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577

25  (2005) to the facts of this case.  The application of *Dura* and subsequent cases that

26  interpret it posed significant risks to Lead Plaintiffs' ability to prevail on such issues

27  as loss causation.

28

- 12 -

576921_1

5.    **The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs' Lead Counsel**

A determination of a fair fee must include consideration of the contingent nature of the fee. It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.[11] *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding counsel's attorneys' fees in *Prudential*, the court noted the risks that plaintiffs' counsel had taken:

> Although today it might appear that risk was not great based on Prudential Securities' global settlement with the Securities and Exchange Commission, such was not the case when the action was commenced and throughout most of the litigation. Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

---

[11]    As noted above, the requested fee here is substantially less than Plaintiffs' Lead Counsel's straight hourly "lodestar."

576921_1

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

Before plaintiffs' counsel commit to prosecute a securities class action on a contingent fee basis, an assessment of the strength of the case, the likelihood of a recovery, the probable size of damages, and the costs of litigating the case are weighed against the expectation of payment if successful. In this Circuit, plaintiffs' counsel expect to be paid a reasonable percentage of any recovery, usually in the range of 25% (absent a fee agreement with the client to seek a different amount). Our expectation about the likely fee, if successful, is part of the equation when determining whether to pursue a case.

Moreover, there are numerous class actions in which plaintiffs' counsel took the risk, expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Two recent examples highlight this point. In a case against JDS Uniphase Corporation, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). While the Ninth Circuit recently reversed the decision, the court in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation. There are many other appellate decisions affirming summary judgment and directed verdicts for defendants or overturning jury verdicts in securities class actions.[12]

---

[12]    *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc.*

576921_1

Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Absent this settlement, there was a sizeable risk that at the end of the day, Class Members, as well as their counsel, would obtain no recovery.

### 6.    A 24.3 Percent Fee Award Is Consistent With Fees Awarded in Similar Complex Class Action Litigation

A Federal Judiciary Center study released in 1996, which covered all class actions in four selected federal district courts with a high number of class actions, including this District, found that as to the size of attorneys' fees: "Median rates ranged from 27% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996). This finding is in line with an analysis of fee awards in class actions conducted in 1996 by National Economic Research Associates, an economics consulting firm. Using data from 433 shareholder class actions, the study concludes: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996). More recently, in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294,

---

*v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001); *Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999); *Green v. Nuveen Advisory Corp.*, 295 F.3d 738 (7th Cir. 2002); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999); *In re Digi Int'l, Inc. Sec. Litig.*, 14 Fed. Appx. 714 (8th Cir. 2001); *Longman v. Food Lion, Inc.*, 197 F.3d 675 (4th Cir. 1999); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (Court of Appeals reversed a jury verdict of $81 million on loss causation grounds against an accounting firm after a 19-day trial in Jacksonville, Florida); *Shuster v. Symmetricom, Inc.*, 35 Fed. Appx. 705 (9th Cir. 2002).

576921_1

298 (3d Cir. 2005), the Third Circuit recently cited with approval an analysis submitted by Professor John C. Coffee of Columbia University, in which he considered statistical data regarding fee awards from other securities class actions and found (1) a 27%-30% median fee range over the course of a two-year period in selected federal district courts; and (2) 25%-30% fees were "'fairly standard'" even in "'mega fund'" class actions. *Id.* at 298 (citation omitted). The fee requested is less than the average paid in these shareholder class actions.

Further, the fee requested is supported by fee awards at or above the Ninth Circuit benchmark in other class action cases:

- *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming 28% fee award);

- *Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005) (awarding one-third of $27.75 million settlement);

- *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP, slip op. (N.D. Cal. Sept. 28, 2007) (awarded 30% of recovery, plus expenses);

- *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB, slip op. (D. Ariz. Nov. 2, 2006) (awarded 30% of recovery; plus expenses);

- *Broderick v. Mazur (PHP Healthcare)*, No. CV-98-1658-MRP(AJWx), slip op. (C.D. Cal. Apr. 26, 2004) (fee equal to 30% of recovery, plus expenses);

- *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844-BES-RJJ, slip op. (D. Nev. Feb. 10, 2009) (awarded 25% of the recovery, plus expenses);

- *In re Brocade Sec. Litig.*, No. C 05-02042 CRB, slip op. (N.D. Cal. Jan. 26, 2009) (awarded 25% of the recovery, plus expenses);

- *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS, slip op. (S.D. Cal. Jan. 13, 2009) (awarded 25% of the recovery, plus expenses);

- *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H(RBB), slip op. (S.D. Cal. Sept. 2, 2008) (awarded 25% of the recovery, plus expenses);

576921_1

- *In re SeraCare Life Sciences, Inc. Sec. Litig.*, No. 05-CV-2335-H(CAB), slip op. (S.D. Cal. Sept. 4, 2007) (awarding 25% of recovery, plus expenses);

- *In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821-BES-PAL, slip op. (D. Nev. June 22, 2007) (awarding 25% of the recovery, plus expenses);

- *In re Charlotte Russe Holding, Inc. Sec. Litig.*, No. 04cv2528 BTM(WMc), slip op. (S.D. Cal. Aug. 29, 2006) (awarded 25% of recovery, plus expenses);

- *In re Surebeam Corp. Sec. Litig.*, No. 03-CV-01721-JM(POR), slip op. (S.D. Cal. July 17, 2006) (awarded 25% of recovery, plus expenses);

- *In re U.S. Aggregates, Inc. Sec. Litig.*, No. C-01-1688-CW, slip op. (N.D. Cal. April 6, 2006) (awarding fee of 25% of recovery, plus expenses);

- *In re Titan, Inc. Sec. Litig.*, No. 04-CV-0676-LAB(NLS), slip op. (S.D. Cal. Dec. 19, 2005) (fee award equal to 25% of recovery, plus expenses);

- *In re Intermune, Inc. Sec. Litig.*, No. C-03-2954-SI, slip op. (N.D. Cal. Aug. 26, 2005) (fee award equal to 25% of recovery; plus expenses);

- *In re Intershop Commc'ns AG Sec. Litig.*, No. C-01-20333-JW, slip op. (N.D. Cal. Dec. 5, 2005) (fee award equal to 25% of recovery, plus expenses);

- *In re Specialty Labs., Inc. Sec. Litig.*, No. CV 02-04352-DDP(RCx), slip op. (C.D. Cal. Dec. 22, 2004) (fee award equal to 25% of recovery, plus expenses);

- *In re Accelerated Networks, Inc. Sec. Litig.*, No. CV-01-3585-SJO(MANx), slip op. (C.D. Cal. June 28, 2004) (awarded 25% of fund recovered, plus expenses); and

- *In re Infonet Servs. Corp. Sec. Litig.*, No. CV-01-10456-NM(CWx), slip op. (C.D. Cal. July 26, 2004) (fee equal to 25% of the fund recovered, plus expenses).

The fees paid in these cases support the 24.3% fee award requested.

576921_1

### 7.     The Customary Fee

Some Circuit courts and scholars have encouraged the "mimic the market" approach in setting fees in common fund class action cases. The Seventh Circuit, for example, has consistently taken this approach. *See Cont'l Ill.*, 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Ikon*, 194 F.R.D. at 194 (same). Thus, the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is higher than the percentage fee requested in this case.

The customary fee in contingent litigation supports a fee award of 24.3% as fair and reasonable.

576921_1

8.   **Reaction of the Class and the Approval of the
     Requested Percentage by the Lead Plaintiffs Supports
     the Award of a 24.3 Percent Fee**

Pursuant to this Court's Order Preliminarily Approving Settlement and Providing for Notice (Document No. 402), the Court-approved Notice of Proposed Settlement of Class Action (the "Notice") was mailed to all Class Members who could be identified with reasonable effort commencing on August 23, 2010 and a Summary Notice was published in *Investor's Business Daily* on August 26, 2010.  The Notice advised the Class of the terms of the fee and expense application.  Comments on, or objections to, either are due on or before October 4, 2010.  Lead Plaintiffs will respond to any such filings on or before October 15, 2010.  However, to date there have been no objections to the requested fees and expenses.

At least as important as the reaction of the Class is the fact that a 24.3% request has been approved by Court-appointed Lead Plaintiffs Wayne County Employees' Retirement System and United Food and Commercial Workers Union Local 880-Retail Food Employers Joint Pension Fund.[13]  *See* Declaration of Richard A. Noelke in Support of Motion for Final Approval of Settlement and an Award of Attorneys' Fees and Expenses and Declaration of Thomas H. Robertson in Support of Motion for Final Approval of Settlement and an Award of Attorneys' Fees and Expenses, submitted herewith.   As discussed below, the request is thus presumptively reasonable.  The Lead Plaintiffs, consisting of three institutional investors, all with significant financial stakes in the outcome of the Litigation, are paradigm fiduciaries for the Class as envisioned by Congress when it enacted the PSLRA.[14]  "[C]ourts

---

[13]   The third Lead Plaintiff UNITE, as is its practice, makes no recommendation regarding fees.  *See* Declaration of Richard N. Rust in Support of Motion for Final Approval of Settlement and for an Award of Expenses ("Rust Declaration").

[14]   Congress enacted the PSLRA in large part to encourage institutional investors (among others) to assume control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and

576921_1

1  should afford a presumption of reasonableness to fee requests submitted pursuant to

2  an agreement between a properly-selected lead plaintiff and properly-selected lead

3  counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *In re Global

4  Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class

5  action cases under the PSLRA, courts presume fee requests submitted pursuant to a

6  retainer agreement negotiated at arm's length between lead plaintiff and lead counsel

7  are reasonable."). Here, two of the Lead Plaintiffs have approved the requested fee

8  and expenses and the third takes no position regarding the request. The fact that the

9  fee has been approved should be given significant weight. *Cendant*, 264 F.3d at 282.

10  This concept was recently reiterated: "In *Cendant*, 264 F.3d 201, we noted, under the

11  Private Securities Litigation Reform Act, the aim of the fee award analysis 'is not to

12  assess whether the fee request is reasonable,' but 'to determine whether the

13  presumption of reasonableness has been rebutted.'" *Rite Aid*, 396 F.3d at 301 n.10

14  (quoting *Cendant*, 264 F.3d at 284).

15  **III.    THE REQUESTED FEE IS REASONABLE UNDER A**
16  **LODESTAR CROSS-CHECK**

17      The first step in applying the lodestar cross-check is to determine the dollar

18  amount of the requested percentage fee award. Here, counsel requests a fee of 24.3%

19  of the gross Settlement Fund, or $6,561,000.00. To ascertain the lodestar figure the

20  reasonable number of hours worked are multiplied by reasonable hourly rates of

21  counsel and para-professionals. In a "common fund" case such as this, the court then

22  can determine an implied multiplier that may be assessed for reasonableness by taking

23  _____

24  exercise control over the selection and actions of plaintiff's counsel." *See* H.R. Conf.
25  Rep. No. 104-369, at 731 (1995), 1995 WL 709276, at *32 (1995); *see also In re
    Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Congress
26  believed that institutions and other investors with a significant financial stake in the
    outcome of a securities class action would be in the best position to monitor the
27  ongoing prosecution of the litigation, select counsel, and to assess the reasonableness
    of counsel's fee request.

28

576921_1

1    into account such factors as the contingent nature and risks of the litigation, the results

2    obtained, and the nature and quality of the services rendered by plaintiffs' counsel.

3    *See, e.g., Hensley*, 461 U.S. 424.   Indeed, "'courts have routinely enhanced the

4    lodestar to reflect the risk of non-payment in common fund cases.'" *Vizcaino*, 290

5    F.3d at 1051 (citation omitted).

6       The cumulative hours expended by Plaintiffs' Lead Counsel and its

7    paraprofessionals in this Litigation through August 24, 2010 are 28,313.50, and the

8    resulting lodestar for the services performed is $12,815,180.00.[15] Thus, the requested

9    fee is approximately 51% of Plaintiffs' Lead Counsel's lodestar, *i.e.*, it results in a

10    *negative* multiplier.

11       In other complex litigation, it is common for courts to enhance the lodestar by

12    multipliers between 3.0 and 4.0 and many courts have awarded higher multipliers.

13    *See, e.g., In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)

14    ("'In recent years multipliers of between 3 and 4.5 have been common' in federal

15    securities cases.") (citation omitted); *Vizcaino*, 290 F.3d at 1051 (finding multipliers

16    ranged as high as 19.6, though most run from 1.0 to 4.0); *In re Xcel Energy, Inc.*, 364

17    F. Supp. 2d 980, 998-99 (D. Minn. 2005) (awarding 25% of $80 million settlement

18    fund, representing a 4.7 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d

19    603, 611 (E.D. Pa. 2003) (awarding fee equal to a multiplier of 4.07 and recognizing

20    that "'multipliers in this range are fairly common'") (citation omitted), *vacated on*

21    *other grounds*, 396 F.3d 294 (3d Cir. 2005); *In re Aetna Inc. Sec. Litig.*, No. MDL

22    1219, 2001 U.S. Dist. LEXIS 68, at *59 (E.D. Pa. Jan. 4, 2001) (awarding 30% of

23    $82.5 million settlement fund, representing a 3.6 multiplier).   Consequently, the

24    attorneys' fee sought, which represents a negative multiplier, is plainly reasonable

25    using a lodestar cross-check.

26    _____

27    [15]    *See* paragraph 4 to the accompanying Park Declaration.

28

576921_1

# IV.   THE REQUESTED EXPENSES SHOULD BE AWARDED

### A.   Plaintiffs' Lead Counsel's Expenses are Reasonable and were Necessarily Incurred to Achieve the Benefit Obtained

Plaintiffs' Lead Counsel has incurred expenses of $1,463,217.47 in prosecuting the Litigation.  These expenses are set forth in the Park Declaration, submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular expenses are of the type typically billed by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted).  *See also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).  Therefore, it is proper to award reasonable expenses even though they are greater than taxable costs.  *Id.  See also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted).  The categories of expenses counsel seek are the type of expenses routinely charged to hourly paying clients and, therefore, should be awarded out of the common fund.

Nearly 60% of the amount of expenses sought consists of payments to investigators, consultants, and/or experts.  The use of investigators in the post-PSLRA passage era is simply not optional.  The investigators were a vital part of the process of identifying, locating, and interviewing potential witnesses.  Plaintiffs' Lead Counsel was also required to retain experts and/or consultants in areas of market

- 22 -

576921_1

efficiency, materiality, loss causation, and damages, as well as product or industry experts. These experts and/or consultants were important in the process of defending the complaints in response to multiple motions to dismiss, establishing that class certification was appropriate, opposing motions for judgment on the pleadings and summary judgment, and calculating damages both for trial and settlement negotiations.

Another substantial expense was the cost of computerized research. These are the charges for computerized factual and legal research services such as Lexis/Nexis and Westlaw. It is standard practice for attorneys to use Lexis/Nexis and Westlaw to assist them in researching legal and factual issues and payment is proper. *See Media Vision*, 913 F. Supp. at 1371. Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See Cont'l Ill.*, 962 F.2d at 570. In approving expenses for computerized research, the court in *Gottlieb v. Wiles*, 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994), underscored the time-saving attributes of computerized research as a reason payment of these expenses should be encouraged. The court also noted that fee-paying clients routinely pay counsel for computerized legal and factual research. *Id.*

In addition, certain counsel were required to travel in connection with this case. The expenses in this category are reasonable in amount, and are properly charged against the fund created. *See Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 741 F. Supp. 84, 86 (S.D.N.Y. 1990).

Photocopying costs are also customarily paid in common fund cases. *See McDonnell Douglas*, 842 F. Supp. at 746. Duplication of documents produced in discovery and pleadings was necessary for the effective prosecution of this case.

576921_1

Other categories include expenses for filing, service and witness fees, court/deposition fees, postage, long distance and facsimile fees, overnight delivery services, mediation fees, and the publication of the notice required by the PSLRA. All were necessary and reasonable and should be awarded.

**B.    Lead Plaintiff's Expenses in Representing the Class Should
Be Awarded**

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Lead Plaintiff UNITE seeks payment for the time it spent and expenses incurred representing the Class. A representative of UNITE has submitted a declaration supporting $57,398.74 in time and expenses incurred in representing the Class. *See* Rust Declaration.

**V.    CONCLUSION**

Throughout the Litigation, Lead Plaintiffs were faced with determined adversaries represented by experienced counsel. Without any assurance of success, Lead Plaintiffs and Plaintiffs' Lead Counsel pursued this Litigation to a successful conclusion. Accordingly, for the reasons set forth above and in the Alvarez Declaration, the Court should award Plaintiffs' Lead Counsel attorneys' fees of 24.3%

576921_1

1  of the gross Settlement Fund and expenses of $1,463,217.47 and expenses for UNITE

2  in the amount of $57,398.74.

3  DATED:  September 7, 2010                Respectfully submitted,

4                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
5                                           KEITH F. PARK
                                            X. JAY ALVAREZ
6                                           JONAH H. GOLDSTEIN
                                            G. PAUL HOWES
7                                           RYAN A. LLORENS
                                            DARRYL J. ALVARADO
8                                           MAUREEN E. MUELLER

9

10                                                  s/ Keith F. Park
                                            _____
                                                   KEITH F. PARK

11
                                            655 West Broadway, Suite 1900
12                                          San Diego, CA  92101
                                            Telephone:  619/231-1058
13                                          619/231-7423 (fax)

14                                          Lead Counsel for Plaintiffs

15                                          SCHWARZWALD McNAIR
                                               & FUSCO LLP
16                                          EBEN O. McNAIR
                                            616 Penton Media Building
17                                          1300 East Ninth Street
                                            Cleveland, OH  44114-1503
18                                          Telephone:  216/566-1600
                                            216/566-1814 (fax)

19                                          ZAUSMER, KAUFMAN, AUGUST
                                               & COLDWELL, P.C.
20                                          MARK J. ZAUSMER
                                            31700 Middlebelt Road, Suite 150
21                                          Farmington Hills, MI  48334-2374
                                            Telephone:  248/851-4111
22                                          248/851-0100 (fax)

23                                          Additional Counsel for Plaintiffs

24

25

26

27

28

                                    - 25 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 7, 2010.

s/ Keith F. Park
KEITH F. PARK

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail:      KeithP@rgrdlaw.com

576921_1

# Mailing Information for a Case 8:06-cv-00169-CJC-RNB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl James Alvarado**
  dalvarado@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Timothy J Burke**
  service@ssbla.com

- **Charles W Cox , II**
  chuck.cox@lw.com,cathy.molina@lw.com

- **Jordan David Eth**
  jeth@mofo.com,npan@mofo.com,nurbina@mofo.com

- **Mark R S Foster**
  mfoster@mofo.com

- **Michiyo M Furukawa**
  mfurukawa@milberg.com,mbowman@milberg.com,cchaffins@milberg.com

- **Michele D Johnson**
  michele.johnson@lw.com,#ocecf@lw.com,jana.roach@lw.com

- **Ryan A Llorens**
  ryanl@rgrdlaw.com

- **Judson E Lobdell**
  jlobdell@mofo.com,mblackmer@mofo.com

- **Eben O McNair , IV**
  emcnair@smcnlaw.com

- **Maureen E Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Stacey M Sprenkel**
  ssprenkel@mofo.com,jhaskins@mofo.com

- **Jeff S Westerman**

**2 7**

jwesterman@milberg.com,cchaffins@milberg.com

- **Ryan Darren White**
  ryan.white@lw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Paul H Dawes
Paul Dawes Law  Offices
49 Wisteria Way
Atherton, CA 94027

Lauren G Kerkhoff
Robbins Geller Rudman & Dowd LLP
655 West Broadway  Suite 1900
San Diego, CA 92101-8498

William S Lerach
Coughlin Stoia Geller Rudman and Robbins
655 West Broadway, Suite 1900
San Diego, CA 92101

Karen T Rogers
Milberg LLP
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071

Bruce G Vanyo
Katten Muchin
2029 Century Park East    Suite 2600
Los Angeles, CA 90067
```

**2 8**